IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, for the use and Benefit of **WINCHESTER WOODWORKING CORP.**, | ) ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:06CV00970 |
| **LIBERTY MUTUAL INSURANCE COMPANY** | ) ) ) ) | Judge: Ellen Segal Huvelle |
| **Defendant.** | ) ) ) | |

### DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant Liberty Mutual Insurance Company ("Liberty"), by counsel, submits this Memorandum of Points and Authorities in support of its motion to dismiss the Complaint filed by Plaintiff United States of America for the use and benefit of Winchester Woodworking Corp. ("Winchester"), or, in the alternative, for summary judgment on the Complaint.

### INTRODUCTION

This action is a Miller Act claim by a subcontractor (Winchester) against a surety (Liberty) for alleged non-payment for work on a federally-administered project. Winchester's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, summary judgment should be granted to Liberty, for two reasons: first, because Winchester has failed to bring its action within the Miller Act's one-year limitations period, and second, because, Winchester has failed to comply with the

1

Subcontract's express conditions precedent requiring it to exhaust certain administrative remedies prior to bringing suit.

## BACKGROUND

In October 2003, Sigal Construction Corporation ("Sigal"), as general contractor, entered into a contract with the United States General Services Administration (the "GSA" or the "Owner") to perform work and provide materials for the construction of the Old State Build-Out project, located at the Harry Truman Building in the District of Columbia (the "Project"). (Compl. ¶ 5). Liberty provided a Miller Act payment bond, bearing number 17010125 (the "Bond"), for the Project on behalf of Sigal. (Compl. ¶ 6; Compl. Ex. 1). Sigal subsequently entered into a written Subcontract agreement with Winchester, whereby Winchester agreed to provide certain labor and material to the Project (the "Subcontract"). (Compl. ¶ 7). A complete and accurate copy of the Subcontract is attached hereto as Exhibit A. On May 24, 2006, Winchester filed suit against Liberty on the Bond, alleging non-payment by Sigal in the amount of $66, 277.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33, 35 (D.D.C. 2002). In deciding such a motion, the Court must accept all the complainant's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. Id. In deciding a motion to dismiss, the Court may properly consider a contract referred to in a complaint and central to a plaintiff's claim, even though the plaintiff fails to attach a copy

2

of the contract. Jacobsen v. Oliver, 201 F. Supp. 2d 93, 110 (D.D.C. 2002); Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is no genuine issue of fact unless "a fair-minded jury could return a verdict for the [non-movant] on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Therefore, a plaintiff's unsupported allegation of a fact in its Complaint is insufficient to avoid summary judgment:

> To render an issue in dispute, a party opposing summary judgment must do more than rest upon her pleading: she must show that there is sufficient evidence supporting the existence of a dispute to require a factfinder to adjudicate the truth of the parties' differing claims.

Worthey v. Snow, 2006 U.S. Dist. LEXIS 40773, *3-4 (D.D.C. 2006), citing Anderson, 477 U.S. at 255.

## ARGUMENT

### I. Winchester Did Not File Within the Miller Act's One-Year Limitations Period

Winchester's Complaint should be dismissed, or summary judgment awarded to Liberty, because Winchester has not filed within the applicable limitations period. A claimant's right to bring suit under the Miller Act is subject to a "strict statute of limitations." United States ex rel. Mavis Mech. Servs. v. Hanover Ins. Co., 1999 U.S. App. LEXIS 15011, *3 (4th Cir. 1999). Specifically, the Miller Act requires claimants to file within one year after the date the claimant last provided labor or material to the project:

3

> An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.

40 USC § 3133(b)(4).

The Miller Act's one-year limitations period is jurisdictional in nature. United States ex rel. Corbett Tech. Solutions v. Safeco Ins. Co. of Am., 238 F. Supp. 2d 168 (D.D.C. 2002). Accordingly, "recovery under the Act requires a plaintiff to bring a claim within the Act's one-year statute of limitations period." United States ex rel. Interstate Mech. Contrs., Inc. v. Int'l Fid. Ins. Co., 200 F.3d 456, 459 (6th Cir. 2000) (granting summary judgment to defendant when plaintiff's Miller Act suit was filed more than one year after plaintiff last performed labor or supplied material to the project); see also Subterranean Constr. Co. v. W.D. Curran & Assocs., 2005 U.S. Dist. LEXIS 18284 (D. Md. 2005) (motion to dismiss granted when one-year limitations period not met).

In this case, Winchester filed its Complaint on May 24, 2006. Therefore, in order to satisfy the one-year limitations period, Winchester would have had to provide labor or material to the Project on or after May 24, 2005. However, Winchester last provided labor or material to the Project on April 18, 2005. Winchester's Complaint was not filed within the statutory period and should be dismissed.

The Project record, including federally-mandated payroll reports, Sigal's Daily Reports, and Winchester's own Statements of Compliance clearly demonstrates that Winchester ceased work on the Project in April 2005 and never returned to the jobsite. Moreover, the express allegations of Winchester's Complaint contradict Winchester's assertion that Winchester provided labor or material to the Project through June 30, 2005. (Compl. ¶ 8).

    A.    Payroll Records and Statements of Compliance Demonstrate that <u>Winchester Last Worked on the Project on April 18, 2005</u>.

Pursuant to the Davis Bacon Act, 40 USC §§ 3141-3148, federal regulations require general contractors on federal projects, such as Sigal, to maintain payroll records for all persons performing labor on the project:

> Payrolls and basic records relating thereto shall be maintained by the contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work. . . Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made and actual wages paid.

29 CFR 5.5(a)(1)(3)(i).

Moreover, contractors are required to submit such payment information about their subcontractors to the public owner of the project:

> The contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the (write in name of appropriate Federal agency) if the agency is a party to the contract, but if the agency is not such a party, the contractor will submit the payrolls to the applicant, sponsor, or owner, as the case may be, for transmission to the (write in name of agency). The payrolls submitted shall set out accurately and completely all of the information required to be maintained under § 5.5(a)(3)(i) of Regulations, 29 CFR part 5. . . . The prime contractor is responsible for the submission of copies of payrolls by all subcontractors.

29 CFR 5.5(a)(1)(3)(ii)(A).

In this case, these federally-mandated payroll records demonstrate that Winchester provided no labor or material to the Project after April 18, 2005. Pursuant to

5

the Davis-Bacon Act and applicable regulations, Sigal maintained payroll records for Winchester's work on the Project and submitted those records regularly to the Owner. The last-dated payroll record Sigal submitted for Winchester's work on the Project was dated April 28, 2005 and reported information for the week ending April 24, 2005. A true and accurate copy of this payroll record is attached hereto as Exhibit B. Sigal did not receive any payroll records from Winchester after this date, and accordingly, did not submit any such records to the Owner. See Affidavit of Kerric T. Baird, attached as Exhibit D ("Baird Aff.") ¶ 5.

Federal law also requires submitted payroll records to be accompanied by a Statement of Compliance signed by the person who pays or supervises the payment of the persons covered by the payroll record. 29 CFR § 5.5(a)(1)(3)(ii)(B). For the Project, James R. Hamilton ("Hamilton"), Winchester's President, prepared the Statements of Compliance for submission to the Owner. The last-dated Statement of Compliance prepared by Hamilton and submitted to Sigal was dated May 2, 2005, and certified that the information reported in the payroll record for the week ending April 24, 2005 was accurate. A true and accurate copy of this Statement of Compliance is attached hereto as Exhibit C. Sigal did not receive any Statements of Compliance from Winchester after this date, and accordingly, did not submit any such statements of compliance to the Owner. See Baird Aff. ¶ 7.

    B.    The Project's Daily Reports Demonstrate that Winchester Last Worked on the Project in April 2005.

Sigal prepared and maintained comprehensive Daily Reports in connection with the Project. These Daily Reports were a day-to-day log of activities at the worksite, including the activities of subcontractors. The Daily Reports, like the payroll records and

6

the Statements of Compliance, make no mention of any labor performed or materials supplied by Winchester to the Project after April 18, 2005. Had Winchester been on-site during this time, Winchester's work would have been noted in the Daily Reports. See Baird Aff. ¶ 10.

### C. Winchester's Bond Claim Demonstrates that Winchester Last Worked on the Project in April 2005.

Winchester's actions in connection with its claim for payment on the Bond are wholly inconsistent with its allegation that it provided labor or material to the Project through June 30, 2005. On June 6, 2005—a full three weeks before Winchester alleges to have provided the last labor and material to the Project—Winchester, through its attorneys, notified Liberty of its claim on the Bond. (Compl. ¶ 12; Compl. Ex. 2). Winchester's letter demanded payment of $141,277 and stated that such payment was "presently due." (Compl., Ex. 2).

In order for such payment to be "presently due" on June 6, 2005, Winchester submitted payment applications to Sigal for "work completed," and allowed Sigal a reasonable time to make payment. (Subcontract ¶ 4.3). Indeed, Winchester alleges that its demand letter was not sent until Sigal refused multiple demands for payment. (Compl. ¶ 11). Importantly, even though Winchester demanded payment on the Bond on June 6, 2005, Winchester never increased the amount of its demand for labor or materials allegedly supplied after the letter was written.[1] Winchester's demand was for the full amount Winchester currently alleges is due (id.).

Winchester's billings to Sigal lend further support to Sigal's allegation that Winchester ceased work on the Project on April 18, 2005. Winchester alleges that Sigal

---

[1] Sigal later paid Winchester some $75,000, reducing the amount demanded by Winchester to the $66,277 stated in the Complaint. (Compl. ¶ 13).

7

owes Winchester a total of $428,277 on the Project, some $66,277 of which remains outstanding. (Compl. ¶¶ 9 & 13). On the payment requisition submitted by Winchester for the period ending March 31, 2005, Winchester billed Sigal for the total it claims due on the Project--$428, 277, with no retention. A true and accurate copy of this payment requisition is attached as Exhibit E. Winchester never increased the amount it claimed due in that March 31 payment requisition for work allegedly performed in April, May, and June 2005.

Logically, Winchester's actions in May and early June 2005 were not those of a subcontractor that intended to supply any more labor or material to the Project. Rather, Winchester's repeated demands to Sigal for full payment, engagement of counsel, and formal demand for payment on the Bond strongly support Sigal's allegation that Winchester's work on the Project was complete long before the June 30 date alleged in Winchester's Complaint.

D.   Conclusion.

Winchester's bare allegation that it performed labor or provided materials to the Project until June 30, 2005 is completely unsupported and flies in the face of overwhelming evidence demonstrating that Winchester permanently ceased work on April 18, 2005: the Project's payroll records, Statements of Compliance signed by Winchester's president, the Project's Daily Reports, the sworn affidavit of Kerric T. Baird, and even Winchester's own demands for full payment on the Bond several weeks before Winchester claims to have ceased work on the Project. Accordingly, Winchester's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, summary judgment should be granted to Liberty pursuant to Fed. R. Civ. P. 56(c).

**II.    Winchester Has Failed to Exhaust its Contractually-Mandated Administrative Remedies**

Even if this Court determines that a genuine issue of material fact exists as to whether Winchester filed within the one-year statutory period, Winchester's Complaint should be dismissed, or summary judgment awarded to Liberty, because Winchester has failed to exhaust the mandatory administrative remedies provided by the Subcontract. Therefore, Winchester is without right to bring this suit.

The Subcontract requires that, for all claims, Winchester is contractually required to exhaust certain administrative remedies before proceeding against either Sigal or Liberty:

> Claims relating to SIGAL.  **As a precondition to any action against SIGAL or its bonding company,** Subcontractor agrees to exhaust through SIGAL the remedies available under the Contract Documents, including suit for breach of contract against Owner through Sigal. If Subcontractor has a claim or dispute which neither relates to nor is the responsibility of the Owner, Subcontractor may proceed in accordance with Section 23 herein.

Subcontract ¶ 7.4 (emphasis added).

If the pass-through process fails to resolve a dispute[2], or if a claim is unrelated to the Owner, Winchester is required to resolve any disputes arising out of or relating to the Subcontract by arbitration:

> Agreement to Arbitration.  Subject to Section 7.3, claims relating to the Owner, unless the parties mutually agree otherwise, or the Contract Documents state otherwise, all claims, disputes, and matters in question arising out of, or relating to, this Subcontract Agreement, or the breach thereof, shall be decided by arbitration, which shall be conducted in accordance with the Construction Industry

---

[2] The Subcontract requires Winchester to attempt to resolve any Owner-related disputes by filing a pass-through claim against the GSA. See Subcontract ¶ 7.3.

9

>Arbitration Rules of the American Arbitration Association then in effect.

Subcontract ¶ 23.1.

The Subcontract places two important and express conditions precedent on Winchester's ability to pursue a lawsuit against Liberty. First, as to all Owner-related claims, Winchester is required to exhaust the administrative remedies provided by the Prime Contract, including filing a pass-through claim against the Owner, before initiating a lawsuit against Liberty. Second, for any and all disputes with Sigal, Winchester is required to seek resolution through arbitration against Sigal before filing suit against either Sigal or Liberty.

Winchester's Complaint fails to allege that it has satisfied either of these express conditions precedent. Winchester has not attempted to seek redress against the GSA for its Owner-related claims, nor has Winchester filed a demand for arbitration with the American Arbitration Association for any claims unrelated to the Owner. See Baird Aff. ¶ 12. Therefore, Winchester's Complaint should be dismissed, or summary judgment should be awarded to Liberty. See De Valk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326 (7th Cir. 1987) (upholding summary judgment for defendant because plaintiff failed to engage in contractually-required mediation); Ziarno v. Gardner Carton & Douglas, LLP, 2004 U.S. Dist. LEXIS 7030 (E.D. Pa. 2004) (case dismissed because the parties failed to submit their dispute to contractually-mandated mediation/arbitration) and United States ex rel. Tanner v. Daco Constr., Inc., 38 F. Supp. 2d 1299, 1304-1305 (D. Okla. 1999) (citing ten District and Appellate court decisions dismissing or staying Miller Act claims pending arbitration required by contract).

## **CONCLUSION**

For the foregoing reasons, Defendant Liberty Mutual Insurance Company respectfully requests that this court: (1) dismiss Winchester's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a cause of action upon which relief may be granted, or, in the alternative, award summary judgment to Liberty pursuant to Fed. R. Civ. P. 56(c); and (2) enter an order requiring Winchester to pay Liberty's reasonable attorney's fees and costs in bringing this motion.

**DATED:**    June 27, 2006

                                       Respectfully submitted,

                                       Jeffrey G. Gilmore
                                       D.C. Bar No. 388362
                                       AKERMAN SENTERFITT
                                       WICKWIRE GAVIN
                                       8100 Boone Blvd, Suite 700
                                       Vienna, Virginia 22182
                                       Phone 703-790-8750
                                       Fax 703-448-1801
                                       jeffrey.gilmore@akerman.com

                                       *Counsel for Defendant Liberty Mutual*
                                       *Insurance Company*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2006, I electronically filed Defendant Liberty Mutual Insurance Company's Memorandum of Points and Authorities in Support of Motion to Dismiss or in the Alternative for Summary Judgment and any attachments, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to:

Seth A. Robbins, Esq.
Corie M. Thornton, Esq.
2620 P Street, NW
Washington, DC 20007

*Counsel for Plaintiff United States f/u/b Winchester Woodworking Corp.*

Jeffrey G. Gilmore