UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>For the Use and Benefit of )<br>WINCHESTER WOODWORKING CORP., )<br>)<br>            **Plaintiff,** )<br>)<br>v. )<br>)<br>LIBERTY MUTUAL INSURANCE COMPANY, )<br>)<br>            **Defendant.** )<br>) | Civil Action No.<br>1:06cv00970<br><br>Judge:<br>Ellen Segal Huvelle |

**PLAINTIFF WINCHESTER WOODWORKING CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Plaintiff, Winchester Woodworking Corporation ("Winchester"), by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure, Rules 7 and 56 and Local Rules 7(b) and 56.1, respectfully files this Supporting Memorandum of Points and Authorities in support of its Opposition to Defendant Liberty Mutual Insurance Company's ("Liberty") Motion to Dismiss or in the alternative for Summary Judgment ("Motion"). As grounds therefor, Winchester states as follows:

**Introduction**

Liberty's Motion to Dismiss or in the Alternative for Summary Judgment must be denied because Winchester: (1) has stated a claim upon which relief may be granted; and (2) genuine issues of material fact are in dispute. Specifically, Winchester unequivocally brought its Miller Act claim well within one year of the Miller Act's one-year limitation period. Further, regardless of the Subcontract Alternative Dispute Resolution ("ADR")

provision, Winchester has a statutory right to commence its Miller Act action against the payment bond posted by Liberty.

**Background**

On October 23, 2003, Sigal Construction Company ("Sigal"), as general contractor, entered into a contract with the General Services Administration ("Owner") for the construction of the Old State Build-Out Project, located at the Harry S. Truman Building in the District of Columbia ("Project"). Complaint ¶ 5. Sigal and Liberty then executed a Labor and Payment Bond, Bond No.: 17010125, dated October 28, 2003, securing Sigal's payment obligations to its subcontractors and suppliers on the Project ("Payment Bond"). Complaint ¶ 6. Subsequently, Sigal entered into an agreement with Winchester to furnish woodworking materials and related labor for use and incorporation into the Project ("Subcontract"). Complaint ¶ 7; Affidavit of James R. Hamilton ("Hamilton Aff.") ¶¶ 4 and 5.

Winchester commenced performance of the Subcontract on December 13, 2003. Complaint ¶ 8; Hamilton Aff. ¶ 4. Over the course of its performance, Winchester submitted to Sigal payment requisitions totaling Four Hundred Twenty-Eight Thousand Two Hundred Seventy-Seven Dollars ($428,277). Complaint ¶ 9; Hamilton Aff. ¶ 9. This total amount reflected the Subcontract price and additional change order work performed by Winchester at Sigal's direction. Sigal, in turn, submitted payments totaling Three Hundred Sixty-Two Thousand Dollars ($362,000). Complaint ¶¶ 9 and 13; Hamilton Aff. ¶¶ 7 and 8. This left an outstanding balance of One Hundred Forty-One Thousand Two Hundred Seventy-Seven Dollars ($141,277) due and owing to Winchester. Complaint ¶ 20; Hamilton Aff. ¶ 10.

Winchester formally sought payment of the outstanding Subcontract balance of One Hundred Forty-One Thousand Two Hundred Seventy-Seven Dollars ($141,277), in April 2005. Hamilton Aff. ¶¶ 10 and 11.  Sigal refused to remit payment to Winchester. Indeed, Sigal contended that Winchester had not completed its performance under the Subcontract. Hamilton Aff. ¶¶ 11 and 12.  In late April 2005, Sigal demanded Winchester complete specific Subcontract work before Sigal would remit any additional Subcontract funds.  Rather than dispute Sigal's position, Winchester furnished additional labor and materials to the Project between April 2005 and June 2005. Hamilton Aff. ¶¶ 14 and 15.

In June 2005, Winchester renewed its demand for payment of One Hundred Forty-One Thousand Two Hundred Seventy-Seven Dollars ($141,277) from Sigal. Hamilton Aff. ¶ 17.  Sigal continued to maintain that Winchester did not complete its work under the Subcontract. Hamilton Aff. ¶ 17.

As a result of Sigal's continued unwillingness to pay, on June 6, 2005, Winchester made its formal demand for payment against the Payment Bond. Hamilton Aff. ¶ 18.  On June 10, 2006, after Liberty pressured Sigal, Sigal finally remitted partial payment to Winchester in the amount of Seventy-Five Thousand Dollars ($75,000), reducing the outstanding balance owing Winchester to Sixty-Six Thousand Two Hundred Seventy-Seven Dollars ($62,277). Hamilton Aff. ¶ 19. Thereafter, at the request of Sigal and in hopes of receiving the remaining contract balance, Winchester continued to furnish labor and/or materials to the Project on June 26, 2006, October 12, 2005, and October 27, 2005.  October 27, 2005, was the last day Winchester furnished labor and materials to the Project. Hamilton Aff. ¶¶ 14 and 15.

**Standard of Review**

    A.    **Standard Of Review For A Motion to Dismiss**

The United States District Court for the District of Columbia has held that a "motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted." F.T.C. v. Capital City Mortgage Corp., 321 F. Supp. 2d 16, 18 (D.D.C. 2004). In considering a motion to dismiss for failure to state a claim, the court shall accept as true all of the allegations in the complaint and construe the facts in the "in the nonmovant's favor." Ford v. Tait, 163 F. Supp. 2d 57, 62 (D.D.C. 2001). Indeed, a "[m]otion to dismiss should not be granted unless 'plaintiff can provide no set of facts in support of [its] claim would entitle [plaintiff] to relief.'" Mittleman v. U.S., 997 F. Supp. 1, 6 (D.D.C. 1998), *quoting* Kowal v. MCI Commc'n. Corp., 16 F.3d 12741, 1276 (D.C. Cir. 1994). Dismissal of the complaint is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ford, 163 F. Supp. 2d at 62.

    B.    **Standard Of Review For A Motion For Summary Judgment**

In ruling on a Motion for Summary Judgment, the Court's role is not to weigh the evidence and determine the truth, but merely to ascertain whether there is a genuine issue for trial. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court "must view the evidence in the light most favorable to the nonmoving party" and " 'draw all reasonable inferences in favor of the nonmoving party'." Davis v. Ashcroft, 355 F. Supp. 2d 330, 337 (D.D.C. 2005) (internal citations omitted). *See also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). If the evidence is such that a jury could find for

the nonmoving party, then summary judgment must be denied.  See Anderson, 477 U.S. at 252.

## Argument

### A.   There Are Material Issues Of Fact Regarding The Last Day Winchester Furnished Materials And Labor At The Project.

Liberty's Motion to Dismiss or in the alternative Motion for Summary Judgment must be dismissed because Winchester filed this action against the Payment Bond within the applicable Miller Act limitations period. Under the Miller Act, a claimant must bring a Miller Act action "no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).  A claimant under the Miller Act satisfies the one year limitations period as long as the materials and labor last furnished consisted of work contemplated by the original contract. U.S. f/u/b of Lank Woodwork Co., Inc. v. CSH Contractors, Inc. et al., 452 F. Supp. 922, 924 (D.D.C. 1978) (where Miller Act claimant's last day of furnishing labor or materials was not for the purpose of "correcting defects, or making repairs"). *See also*, U.S. f/u/b/o Corbett Tech. Solutions, Inc. v. Safeco Ins., Co. of Am., 238 F. Supp. 2d 168, 173 (D.D.C.2002) (where the District Court declined to grant a Motion for Summary Judgment because a genuine issue of fact regarding whether a subcontractor furnished labor and/or materials which was party of the "original contract"); U.S. f/u/b/o Hope's Architectural Products v. N.P.P. Contractors, Inc., et al., 1997 WL 148641, *2 (D.D.C.) (where the District Court denied a motion for Summary Judgment on the basis that the Miller Act claimant  "performed work 'which was part of the original contract'" by installing back-ordered products required by the contract).

Winchester indisputably satisfied the Miller Act statute of limitations. Winchester performed and completed original subcontract work as late as October 27, 2005 (Hamilton Aff. ¶ 15) and commenced its Miller Act action within one year there after – on May 24, 2006. As described in the accompanying <u>Disputed Material Facts</u> and the Affidavit of Mr. James R. Hamilton, the facts clearly support Winchester's position. Sigal refused to remit payment to Winchester in April 2005 and June 2005, on the basis that Winchester allegedly failed to complete original Subcontract work. Hamilton Aff. ¶¶ 10 through 17.  Sigal's refusal to pay Winchester was the impetus by which Winchester furnished labor and materials to the Project throughout the year in 2005.  Even though Winchester disagreed with the basis of Sigal's refusal to remit payment, Winchester jumped through hoops and furnished such material and labor under the original Subcontract scope of work.  <u>Id</u>.

Specifically, Winchester furnished woodworking materials and labor contemplated by the Subcontract on April 26, 2005, May 18, 2005, May 20, 2005, and June 28, 2005. Hamilton Aff. ¶ 15.  Moreover, Winchester met with Sigal on October 12, 2005, to discuss Winchester's progress under the original Subcontract.  Hamilton Aff. ¶ 16.  At that meeting, Sigal continued to insist that Winchester was required to furnish labor and materials under the original Subcontract.  <u>Id.</u>  Again, and with the expectation of receiving full payment from Sigal, Winchester furnished labor and materials under the original Subcontract through October 27, 2005. Hamilton Aff. ¶ 15.  .

Winchester vigorously disagrees with Liberty's argument that "Winchester ceased work on the Project in April 2005 and never returned to the jobsite."  This contention clearly contradicts Sigal's longstanding position.  Indeed, in April 2005, Sigal refused to

remit payment to Winchester until Winchester completed its alleged outstanding Subcontract work. Consistent with Sigal's demands, Winchester furnished labor and supplies to the Project from April 2005 through October 27, 2005, so as to receive the subcontract balance due and owing to Winchester.

Liberty's Motion to Dismiss or in the alternative for Summary Judgment must, therefore, be denied because Winchester clearly satisfied the one-year limitations period required by the Miller Act. 40 U.S.C. § 3133(b)(4). As in Lank Woodwork Co., Inc., Winchester performed labor and furnished materials as contemplated by the original Subcontract with Sigal. U.S. f/u/b of Lank Woodwork Co., Inc. v. CSH Contractors, Inc. et al., 452 F. Supp. at 924; *See also*, 40 U.S.C. § 3133(b)(4). Namely, Winchester last performed labor and furnished materials on October 27, 2005. The labor performed and materials furnished were required by Sigal and within the Subcontract. *See, e.g.,* U.S. f/u/b/o of Lank Woodwork Co., Inc. v. CSH Contractors, Inc. et al., 452 F. Supp. at 924. *See also*, U.S. f/u/b/o Hope's Architectural Products v. N.P.P. Contractors, Inc., et al., 1997 WL 148641, *2. For these reasons, Winchester's Complaint survives Liberty's' Motion to Dismiss or in the Alternative for Summary Judgment.

**B.   Winchester Has A Statutory Right To Bring Its Miller Act Action Before Satisfying Any ADR Provision In the Subcontract.**

The Miller Act is a remedial Federal Statute that liberally affords Winchester an opportunity to commence an independent action against a surety for non-payment by a Sigal. No limits to this right exist in the present action. Liberty, however, misleadingly urges this Court to believe a requirement under the Subcontract that Winchester and Sigal must arbitrate any disputes prior to the commencement of legal action similarly requires Winchester to arbitrate with Sigal prior to commencing its statutorily protected Miller

Act action.  Such arguments advanced by Liberty are misplaced.  Winchester may bring a Miller Act claim against Liberty regardless and independent of any administrative requirements imposed upon Winchester in its Subcontract with Sigal.  Further, Winchester never bound itself to participate in any administrative processes with Liberty prior to an action against the Payment Bond.

> **1. A Subcontract Provision Requiring The Arbitration Of Disputes Between A Subcontractor And General Contractor Is <u>Not</u> A Bar To Bringing A Miller Act Claim.**

Liberty attempts to eliminate Winchester's independent Miller Act Right by arguing that provisions in the Winchester-Sigal Subcontract somehow require Winchester and Sigal to first exhaust Subcontract ADR provisions. <u>See</u> Liberty's Motion to Dismiss, Ex. 1, ¶ 23.1.  In effect, Liberty seeks to enforce a provision that was agreed upon by and relates to Winchester and Sigal alone.

Winchester cannot be prevented from pursuing its Miller Act claim based on an ADR provision contained in the Subcontract, which is not incorporated into the Payment Bond. *See e.g.,* <u>Moore Brothers Co. v. Brown & Root, Inc. et al.</u>, 207 F.3d 717, 722-723 (4th Cir.2000) (where the Court held that a surety could not invoke a "pay when paid" subcontract provision against a subcontractor because such clause was not contained or incorporated into the payment bond).  This general rule lies on the reasoning that, in a Miller Act claim a " 'subcontractor is suing under the Bond and not the subcontract.  The two are separate agreements.'" <u>Id</u>., *citing* <u>Brown & Kerr, Inc. v. St. Paul Fire and Marine Ins. Co.</u>, 940 F. Supp. 1245, 1249 (N.D. Ill. 1996).

Specifically, a surety may not seek to enforce an arbitration provision in a contract to which it is not a party. *See* <u>Aetna Cas. & Sur. Co. v. Jelac Corp.</u>, 505 So.2d 37

(Fla. Dist. Ct. App. 4th Dist. 1987) (where surety's motion to dismiss a Miller Act claim on the basis of an arbitration clause in a subcontract was denied because the surety was not entitled to exercise rights under the subcontract to which it was not a party); *See also*, Capital Elec. Const. Co., *supra* (where subcontractor could not compel a surety to arbitrate based on an arbitration provision between the subcontractor and general contractor since the surety was not a party to the agreement); *See also*, Cost. Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58 (3rd Cir. 1985) (where a surety who was not a party to an arbitration agreement between a subcontractor and general contractor could not compel the subcontractor to arbitrate prior to the commencement of a Miller Act claim); *See also*, U.S. f/u/b/o N.U., Inc. v. Gulf Ins. Co., 650 F. Supp. 557 (S.D. Fla.1986) (where a surety could not enforce an arbitration clause in a subcontract between a subcontractor and general contractor).

Clearly, Liberty's position is off base. To support its argument that Winchester must exhaust the arbitration requirement under paragraph 23.1 of the Subcontract, Liberty relies on three cases which bear absolutely no relation to the instant matter. See Liberty's Motion to Dismiss, p. 10. First, Liberty relies on De Valk v. Lincoln Mercury, Inc. v. Ford Motor Co., which relates to mediation clause between an automobile dealership and an automobile manufacturing company; the case neither involves nor bears any relation to a construction contract or the Miller Act. De Valk, 811 F.2d 326 (7th Cir. 1987). Liberty then relies on an unpublished case requiring mediation between two entities who are neither a party to a construction contract nor subject to the Miller Act. *See* Ziarno v. Gardner Carton & Douglas LLP, 2004 LEXIS 7030 (E.D. Pa. 2004).

Liberty additionally relies on U.S. ex rel. Tanner v. Daco Const., Inc., which involved a subcontract that specifically exempted federal claims from an arbitration clause. U.S. ex rel. Tanner v. Daco Const., Inc, 38 F. Supp. 2d 1299, 1304 - 1305 (N.D. Okla. 1999).[1]  Despite the Miller Act exemption, the Tanner court stayed the subcontractor's Miller Act claim against the surety, but did so only to resolve additional equitable claims the subcontractor raised against the contractor which were subject to the subcontract's arbitration provision. Id. at 1303 – 1305.  In the case at bar, the only cause of action involved is a Miller Act claim against Liberty.  Winchester did not, as was the case in Tanner, bring any claims against Sigal that would be subject to the arbitration provision of the Subcontract.  Moreover, Winchester does not have any obligation to join Sigal or the Owner in the lawsuit in order to enforce its Miller Act rights.  See United

---

[1] In its Motion to Dismiss at p. 10, Liberty points out that Tanner cites ten district and appellate court decisions staying Miller Act clams pending arbitration.  The cases cited in Tanner are readily distinguishable from the case at bar.  Five of these cases involve matters brought simultaneously by a subcontractor against a contractor and a surety. In such cases, court stayed the Miller Act claim in favor of the already-commenced actions against the contractor.  *See e.g,* Warren Bros. Co. v. Cardi Corp., 471 F.2d 1304, 1306 (1st Cir.1973); See United States ex rel. Chicago Bridge & Iron Co. v. Ets-Hokin Corp., 284 F.Supp. 471 (N.D.Cal.1966), aff'd, 397 F.2d 935 (9th Cir.1968); United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d 705, 706 (2d Cir.), cert. dismissed, 385 U.S. 924, 87 S.Ct. 239, 17 L.Ed.2d 148 (1966); United States ex rel. Seaboard Surety Co., v. Electronic & Missile Facilities, Inc., 206 F.Supp. 790 (D.P.R.1962); Agostini Bros. Bldg. Corp. v. United States ex rel. Virginia-Carolina Elec. Works, 142 F.2d 854 (4th Cir.1944).  One case is distinguishable on the basis that the payment bond incorporated by reference an arbitration clause in a subcontract. Loyal Order of Moose v. International Fidelity Ins. Co., 797 P.2d 622, 629 (Alaska 1990).  Another is distinguishable on the basis that it does not involve a Miller Act claim and relates to a private project. J.S. & H. Const. Co. v. Richmond County Hosp. Authority, 473 F.2d 212, 214 (5th Cir.1973).  Finally, one case involves a subcontractor that consented to a stay pending arbitration (United States ex rel. Portland Const. Co. v. Weiss Pollution Control Corp., 532 F.2d 1009, 1010 (5th Cir.1976)), while another a subcontractor sought to enforce an arbitration provision against a general contractor (United States ex rel. Newton v. Neumann Caribbean Intern., Ltd., 750 F.2d 1422, 1424 (9th Cir.1985)).

States ex rel. Hudson v. Peerless, 374 F.2d 942 (4th Cir. 1967) (under Miller Act, subcontractor not obligated to join the principal in lawsuit against the surety). Consequently, there is no basis for this Court to apply Tanner and stay this action.

In addition to citing these non-applicable cases, Liberty essentially attempts to invoke an arbitration provision of an agreement to which it is not a party. The provision upon which Liberty relies expressly provides that Winchester must arbitrate any dispute it has with Sigal prior to commencing any action against Sigal. The language further omits any reference whatsoever to Liberty. Winchester is therefore entitled to proceed with its Miller Act claim against Liberty despite paragraph 23.1 of the Subcontract with Sigal. *See* Aetna Cas. & Sur. Co. v. Jelac Corp., 505 So.2d 37 (Fla. Dist. Ct. App. 4th Dist. 1987); *See also*, U.S. f/u/b/o of Capital Electric Constr. Co. v. Pool and Canfield et al., 778 F. Supp. 1088 (W.D. Mo.1991); Cost. Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58 (3rd Cir. 1985); U.S. f/u/b/o N.U., Inc. v. Gulf Ins. Co., 650 F. Supp. 557 (S.D. Fla.1986).

### 2. Winchester's Miller Act Claim Is An Independent Action And May Only Be Expressly Waived.

In the absence of the Miller Act, Winchester would have no right to seek payment under Liberty's Payment Bond.[2] The Miller Act is an independent legal action which may only be expressly abrogated by the party entitled to seek relief under the Miller Act. U.S. f/u/b/o Capital Electric Constr. Co. v. Pool and Canfield et al., 778 F.Supp. 1088, 1090 (W.D.Mo.1991). In Capital Electric Const., the District Court found "that the Miller

---

[2] "The surety relationship existing between [surety] and [subcontractor] arises out of the Miller Act . . . and [the subcontractor's] legal recourse for seeking compensation from [the surety] is limited to federal district court." U.S. f/u/b/o of Capital Electric Constr. Co. v. Pool and Canfield et al., 778 F. Supp. 1088, 1090 (W.D. Mo.1991).

act is an 'external legal constraint'" and, as such, rights under the Act could not be altered unless expressly waived. Capital Electric Const., 778 F. Supp. at 1091.  This interpretation is based on the rationale that the Miller Act "is designed to provide [payment] protection to subcontractors" who may ordinarily "secure a lien or privilege against the improved private party." U.S. f/u/b/o Pensacola Const. Co. v. St. Paul Fire and Marine Ins. Co., 705 F. Supp. 306, 308 (W.D. La. 1988).  As such, this "congressionally mandated remedy should not [be lightly] interfered with or delayed." Id.

       The District Court in Pensacola Const. Co. followed this underlying rational and allowed a subcontractor's claim to independently proceed despite the availability of other legal avenues, e.g., its claim against the general contractor. Id. at 307.  In Pensacola Const. Co., the surety-defendant sought a stay of plaintiff-subcontractor's Miller Act claim on the basis that the subcontractor was required to extinguish any claims against the general contractor. Id.  The District Court, however, disagreed with the surety on the basis of judicial economy and permitted the subcontractor's Miller Act claim to continue. Id. In reaching its decision, the District Court quoted the United States Supreme Court and held that the surety " 'must make out a clear case of hardship or inequity in being required to go forward . . . Only in rare circumstance [sic] will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will settle the rights of both.' " Id., *quoting* Landis v. North American Co., 200 U.S. 248, 255 (1936).

       The language of the Subcontract fails to expressly waive Winchester's right to commence a Miller Act action. U.S. f/u/b/o of Capital Electric Constr. Co. v. Pool and Canfield et al., 778 F. Supp. 1088, 1091 (W.D. Mo.1991).  Winchester never waived its

right to commence a Miller Act action. Winchester only agreed, by its signature on the Subcontract, to arbitrate disputes arising out of the Subcontract and pertaining to Sigal. Nor did Winchester enter into any separate agreement with Liberty in which it agreed to first arbitrate certain disputes with Sigal before exercising its rights against the Payment Bond.

As in Pensacola Const. Co., Winchester must be permitted to litigate its Miller Act Claim.  Any limitation on Winchester's rights under the Miller Act would completely foreclose Winchester's ability to collect payment for its Subcontract work under the Payment Bond.  U.S. f/u/b/o Pensacola Const. Co. v. St. Paul Fire and Marine Ins. Co., 705 F. Supp. 306, 308 (W.D. La. 1988); *See also*, U.S. f/u/b/o of Capital Electric Constr. Co. v. Pool and Canfield et al., 778 F. Supp. 1088, 1090 (W.D. Mo.1991).  As stated in Pensacola Const. Co., subcontractors such as Winchester must be afforded this right to collect payment on a public project in the absence of the ability to secure its rights vis-à-vis a mechanic's lien as in cases involving private property-projects.  Furthermore, the Miller Act firmly establishes a relationship between Winchester and Liberty and logically allows a subcontractor to seek payment from the surety regardless of other remedies. *See* Capital Electric Const. Co., 778 F. Supp. at 1090.

      **3.   The Federal Miller Act Is A Remedial Statute**

The Federal Miller Act, 40 U.S.C. §3131 *et seq.*, is a statute enacted by Congress to protect persons supplying labor and materials for construction of federal buildings. U.S. f/u/b/o Sherman v. Carter, 77. S. Ct. 793 (1957).  In order to maintain a claim under the Miller Act, "a plaintiff must prove essentially two elements:  (1) it has 'furnished labor or material in carrying out work provided for in a contract for which a payment

bond is furnished under section 3131'; and (2) it 'has not been paid in full within 90 days.'" U.S. ex rel. Tennessee Valley Marble Holding Co. v. Grunley Const., --- F.Supp.2d ---, 2006 WL 1348523, *10 (D.D.C. 2005), *citing* 40 U.S.C. § 3133(b)(1). The claimant is also required to timely notify the principal contractor of its claim. U.S. f/u/b/o Pool Const. Co. v. Smith Road Const. Co., Inc*.,* 227 F. Supp. 315 (N.D. Okla. 1964). The Miller Act is "entitled to a liberal construction and application in order to properly effectuate the Congressional intent to protect those whose labor and materials go into public projects." United States v. Carter, 353 U.S. 210, 216 (1976).

>Pursuant to the Miller Act, 40 U.S.C.A. § 3133, Congress mandated that:

>>Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C.A. § 3133(b)(1). The Miller Act also provides that any lawsuit must be brought "in the name of the United States for the use of the person bringing the action" and gives the claimant the right to bring that action "in the United States District Court for any district in which the contract was to be performed and executed." Id. at § 3133(b)(3). *See e.g.,* U.S. f/u/b/o of Capital Electric Constr. Co. v. Pool and Canfield et al., 778 F. Supp. 1088, 1090 (W.D. Mo.1991) ("[subcontractor's] legal recourse for seeking compensation from [a surety] is exclusively limited to federal district court"); *See also*, U.S. f/u/b/o Portland Const. Co. v. Weiss Pollution Control Corp., 532 F.2d 1009, 1012 (5th Cir. 1976) (where a subcontractor could "avail itself of its Miller Act remedy against

[a surety] only by way of a Miller Act suit in federal court.")

Winchester's present action seeks the benefit of the remedial Miller Act. Winchester commenced its present Miller Act action to obtain payment from a surety (here, Liberty) because Sigal reneged on its agreements and refused to remit payment to Winchester for the labor and materials Winchester furnished to the Project. 40 U.S.C.A. § 3133(b)(1). Winchester furnished labor and materials in accordance with the Miller Act. Winchester notified the surety of its non-payment within 90 days after the last day it performed work. Thus, based on the plain meaning of the Miller Act, Winchester's complaint should not be dismissed.

### 4. Subcontract Provisions 7.3 and 7.4 Are Inapplicable To This Miller Act Action Between Winchester and Liberty.

Finally, Liberty attempts to mislead this Court by suggesting that other subcontract provisions between Winchester and Sigal prevent Winchester from commencing its Miller Act action. Specifically, Liberty attempts to invoke paragraphs 7.3 and 7.4 of the Subcontract, which appear to address claims relating to the Project Owner and related processes before an action may be commenced against either Liberty or Sigal. This attempt by Liberty is simply a red herring: Winchester has no claim against the Owner and, as such, these Subcontract provisions are wrongly relied upon in Liberty's Motion to Dismiss or in the Alternative for Summary Judgment.

As thoroughly discussed above, Winchester has elected to exercise an independent statutory right under the Miller Act. *See* Capital Elec. Const. Co., 778 F. Supp. at 1090. Neither Winchester nor Sigal nor Liberty has taken any steps to waive this right. *See e.g,* Subcontract between Winchester and Sigal (Exhibit 1 to Liberty's Motion to Dismiss); *See also,* Liberty's Payment Bond (Exhibit 1 to Winchester's

Complaint). The existence of any claim or action against the Owner is neither known nor ripe for the purposes of Liberty's Motion for Summary Judgment. Only the commencement of discovery in the present litigation will reveal the existence, if any, of such claims. Regardless, Winchester's claim is against Liberty and, consequently, paragraphs 7.3 and 7.4 of the Subcontract relating to claims against the Owner neither relate to nor preclude Winchester's Miller Act action.

## Conclusion

For all of the above reasons, Winchester requests that this Honorable Court deny Liberty's Motion to Dismiss or in the Alternative for Summary Judgment, thereby permitting Winchester to proceed on its Federal Miller Act Claim, and to grant any additional relief this Honorable Court deems appropriate.

Dated: July 13, 2006                              Respectfully submitted,

**QUAGLIANO & SEEGER, P.C.**

/s/ Corie M. Thornton
_____
Seth A. Robbins, Bar No.: 471812
Corie M. Thornton Bar No.: 496392
2620 P Street, NW
Washington, DC 20007
Tel.   (202) 822-8838
Fax.   (202) 822-6982
**Counsel for Plaintiff
United States f/u/b of
Winchester Woodworking Corp.**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum was served electronically and by first class mail, postage pre-paid on July 13, 2006, upon:

Jeffrey G. Gilmore, Esq.
ACKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Blvd, Suite 700
Vienna, Virginia 22182
Tel. 703-790-8750
Fax. 703-448-1801

**Counsel for Defendant Liberty Mutual Insurance Company**

/s/ Corie M. Thornton

Corie M. Thornton